UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT PADUCAH

CHARLES M. HARRIS                                                          PLAINTIFF

v.                                       CIVIL ACTION NO. 5:14CV-14-R

DEP'T OF CMTY. BASED SERVS. *et al*.                              DEFENDANTS

## MEMORANDUM OPINION AND ORDER

Plaintiff Charles M. Harris, proceeding *in forma pauperis*, filed a *pro se* complaint pursuant to 42 U.S.C. § 1983 (DN 1). Subsequently, he filed a memorandum in support of his complaint (DN 8). The Court construes the memorandum in support as a motion to amend the complaint. Construed as such, the motion to amend (DN 8) is **GRANTED**. This matter is before the Court for initial review of the complaint pursuant to 28 U.S.C. § 1915(e)(2) and *McGore v. Wrigglesworth*, 114 F.3d 601, 608-09 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007). For the reasons that follow, this action will be dismissed.

### I. SUMMARY OF CLAIMS

In his complaint, Plaintiff names eight Defendants. The named Defendants are as follows: (1) Department of Community Based Services; (2) Department of Youth and Family Services; (3) Department of Probation and Parole; (4) Department of Juvenile Justice; (5) Kentucky Personnel Cabinet "(as represented by local administrators of the Christian, Hopkins, Trigg, and Todd County agencies listed)"; (6) Western State Hospital; (7) Christian County Court "(as represented by Judges James G. Adams, Jr, and John Atkins)"; and (8) Christian County Board of Education. As relief, Plaintiff seeks monetary damages, other "punitive relief and/or measures as this court deems equitable"; and for the Court to "order the initiation of an investigation by all of the requisite agencies of the Federal Government . . . ."

Plaintiff states that on March 25, 2006, he applied to Defendant Kentucky Personnel Cabinet for employment. He states that on July 5, 2006, he moved to Christian County. According to Plaintiff, after establishing residence in Christian County, he applied to the Defendant Kentucky Personnel Cabinet for jobs. Plaintiff states that he "was duly certified by said agency, and placed upon the requisite registers for the purpose of potential employ." According to Plaintiff, he "acquired other professional credentials, including a Notarial Commission from the Secretary of State's Office, and a Social Work License from the Kentucky Board of Social Work, to assist him in obtaining employment . . . ." Plaintiff states that "for a period of time exceeding 7 years" none of the Defendant agencies employed Plaintiff in any capacity. Plaintiff contends that the "hiring managers or office managers of the respective listed agencies, denied [him] gainful employ with malice aforethought and deliberate intent to exclude [him] from any meaningful participation in said agencies, as an employee thereof, hereby leading [Plaintiff] to believe that a De Facto state of Discriminatory conduct exists on the part of said agencies and persons." Plaintiff states that he knows of instances in which Defendants have hired people "without following the established procedures mandated by the Personnel Cabinet" either by not posting the position or not calling Plaintiff in for a "proper interview."

According to Plaintiff, "the above listed agencies, and their representatives, did in fact interview [him] on several occasions." When interviewed, Plaintiff states that he was told "Frankfort has to give final approval to your hiring." Plaintiff represents that he has "acquired knowledge that leads him to the conclusion that said statement is a deliberate falsehood, perpetrated by the agents and employees of the listed agencies, in a deliberate and systematic attempt to deny [him] gainful employment . . . ." Plaintiff believes this statement is false

because it is his understanding that once Frankfort certified his suitability for hire, Frankfort had "no further say in the local hiring process." Plaintiff states that "the presence of the same agents and/or representatives at [his] interviews, in the counties of Trigg, Hopkins, and Christian" leads him to believe "that for a period of time exceeding 7 years, there has been systematic and ongoing collusion and conspiracy by agents and representatives of the listed agencies in denying him" employment.

At some point, according to Plaintiff, he was hired by the Kentucky Department of Corrections to work at Kentucky State Penitentiary "despite [his] lack of prior experience in this area." Plaintiff states that he completed training for this job at the Western Kentucky Training Center in Lyon County. Plaintiff concludes that this "serves as prima facie evidence of his suitability for employ by said listed agencies within the Counties of Christian, Trigg, and Hopkins," and his failure to obtain employment in those counties "proves that there is, and has been, systematic collusion, conspiracy, and discrimination against him by the listed agencies." Further, Plaintiff states that "there is no legitimate legal, ethical, or moral reason or principle that has mitigated, or would tend to mitigate, against his being employed . . . ."

As to Todd County, Plaintiff states that despite being on the "register in the County of Todd, he has never been contacted by ANY of the agencies listed within the confines of said County, . . . thereby establishing prima facie evidence of both discriminatory hiring practices, and violation of the [Defendant] Kentucky Personnel Cabinet's published and stated intent to seek, provide, and maintain a diverse workforce."

Plaintiff believes that "said listed agencies, with systematic act, deliberate intent, and malice aforethought, denied him employment by violating the anti-discrimination provisions of

3

the commonwealth of Kentucky Constitution, the Laws of same governing discrimination in employment . . . and stated mandate of the [Defendant] Kentucky Personnel Cabinet in seeking a diverse workforce." Plaintiff states that "the actions of these agencies and their representatives" have rendered him unable to be "self-supporting," have damaged his reputation, denied him "the ability to further his education within his chosen field of expertise," denied him the "ability to gain valuable experience within said field of expertise," caused him to incur debt, damaged his "professional reputation and standing," and tarnished his "civic standing in the community" which is evidenced by the fact that "he has never been called to serve as a juror . . . ." Plaintiff states that he has "exhausted all other avenues of recourse, including contacting the Equal Employment Opportunity Commission, who have never returned his calls or communications in any form, the Kentucky Department of Human Rights, who have also never returned any calls of communications by [Plaintiff] . . . ."

Plaintiff alleges that Defendant Department of Community Based Services "did with malice aforethought attempt to have him prosecuted by the Christian County courts" as the result of an accident for which he was not legally responsible. Plaintiff states that "an unknown employee" of this Defendant threatened a Kristi Goza with removal of her children if she would not cooperate with the Defendant Department of Community Based Services' attempt to have Plaintiff prosecuted. According to Plaintiff, this employee also modified a report which, prior to modification, had established Plaintiff was not guilty of abuse or neglect of Ms. Goza's minor children. Plaintiff states that "during the period of time of this occurrence," this department "actually offered him an interview, all the time knowing that there was a Grand Jury hearing and potential indictment against [Plaintiff] pending, and also finding [Plaintiff] to be negligent in the

4

children's care without ever having conducted a proper investigation, . . . and with knowledge that [Plaintiff] was potentially, or had been, placed on a State or National registry of Abusive and Neglectful persons." Plaintiff further alleges that Defendant Department of Community Based Services "has practiced Prima Facie discriminatory hiring practices . . . in that they have discriminated on the basis of Sex, by maintaining a workforce comprised almost solely of women, and actively seeking to maintain such, to the almost total exclusion of any consideration of male employees . . . ."

Moreover, Plaintiff contends "that his son was forced to plead guilty to an offense that never occurred, in a blatantly discriminatory attempt to 'send a message', to [Plaintiff]." According to Plaintiff, his son was arrested by the Hopkinsville Police Department and charged with abuse of a teacher and destruction of school property. Plaintiff states that he was informed by the Assistant Principal at Christian County High School that there was a videotape that proved the allegations against his son. Plaintiff states, "[u]pon attending court, Judge James G. Adams, Jr, subpoenaed the principal complainants and the, 'videotape'; at a later proceeding, the subpoena was totally ignored . . . ." Plaintiff states that his son was advised that if he pled guilty he would be released into his father's custody. However, according to Plaintiff, after his son pled guilty, he was not released to Plaintiff, but was "re-committed to the Juvenile facility at Paducah."

Plaintiff alleges that he was "denied the right to practice his profession by the Defendant Christian County Board of Education." He states that he entered into an agreement with a parent "to report and advise her on her Son's school progress and conduct, and that the Principal of the North Drive Middle School at that time, informed [Plaintiff] that, quote, 'He had never heard of

5

such a thing as a private Social worker' . . . ." Plaintiff further states that he was employed by the Defendant Christian County Board of Education as a substitute teacher for three days. According to Plaintiff, on the third day, he was approached in the hallway by a juvenile female who hugged Plaintiff and told Plaintiff that he was "the best teacher ever." Plaintiff states that after that occurrence he has never again been called to work as a substitute teacher "nor has he ever been furnished ANY valid reason for that omission."

According to Plaintiff, at some unspecified time, he was employed by Defendant Western State Hospital as a Security Guard. Plaintiff states that he "noted that the Social Services department of said facility was hiring Social Workers." Plaintiff states that he went to his local congressman's office to inquire as to why he was not being considered for any of those positions. According to Plaintiff, the "Congressman's secretary called the facility and asked." Three days later, Plaintiff represents, he was informed "that his services were no longer required, as he had given cigarettes to a patient at the hospital, in violation of Hospital policy." Plaintiff "feels that he was dismissed with no proper hearing or investigation of that allegation by an adjudicated mental patient of long residence at the facility."

Plaintiff states that he "attempted to file a 'Show Cause', motion in the Court of Judge John Atkins of the Christian District Court, at the same time filing a pauperis motion." According to Plaintiff, his "pauperis motion was denied by Judge Atkins, thereby effectively denying [Plaintiff] access to the legal process, and preventing [Plaintiff] from seeking Redress of Grievance, as provided for under the law."

Plaintiff states that "despite being duly qualified, certified, and trained, he has never been contacted by the Local office of the Department of Probation and Parole for employment in any

capacity with that agency." Further, Plaintiff states that despite being qualified and having worked in the field of juvenile justice on two prior occasions, "he has never been considered for employ by any of the local offices of the 4 counties listed within this petition."

In the final paragraph of his complaint, Plaintiff states that the actions he describes were taken "with malice and considered forethought by said persons and agencies, and that they constitute proof that there has been a concerted effort on their parts to deny [Plaintiff's] civil rights, to exclude [Plaintiff] any sort of meaningful ability to be a self-sustaining member of the community, and have worked to maintain that state over a period of time exceeding 7 years."

In his amendment to the complaint, Plaintiff states that the "Personnel cabinet . . . [has] repeatedly informed [him] that their primary function is to process applications, perform the proper investigations and background checks, and certify an applicant's suitability for state employ . . . ." Plaintiff states that when he was interviewed by "local hiring authorities" he was informed something to the effect of "Frankfort had to give final approval of your hiring." According to Plaintiff, these are contradictory statements. Plaintiff further states that he has "applied for over 200 positions within the area of the four counties listed in his petition, and has received but 9 total interviews . . . ." He states that in "at least 5 of those interviews, conducted outside his home county of Christian, a representative of a Christian County agency has been present . . . ." Plaintiff states that he wishes this Court to know that he has attempted to contact the Equal Employment Opportunity Commission [EEOC] on at least five occasions "and has received absolutely no reply of any kind in regard to the initiating of any sort of investigation of his claims." Further, Plaintiff states that Judge John Atkins of the Christian County Justice Court

denied his access to the legal process based upon the same information Plaintiff used to bring this action.

## II. **STANDARD OF REVIEW**

Upon review under 28 U.S.C. § 1915(e), a district court must dismiss a case at any time if it determines that the action is frivolous or malicious, fails to state a claim upon which relief may be granted or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B). A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). The trial court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. *Id.* at 327. In order to survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). "But the district court need not accept a 'bare assertion of legal conclusions.'" *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d at 488 (quoting *Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995)). The court's duty "does not require [it] to conjure up unpled allegations," *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979), or to create a claim for a plaintiff. *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975). To command otherwise would require the Court "to explore exhaustively all

potential claims of a *pro se* plaintiff, [and] would also transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

### III. <u>LEGAL ANALYSIS</u>

*A. Employment Discrimination Claims*

Plaintiff alleges that he was impermissibly discriminated against by Defendants when they failed to hire him for employment positions for which he applied. He appears to contend that the wrongful discrimination was based on his sex, male. A plaintiff's right to equal employment with regard to sex is enforced through Title VII of the Civil Rights Act of 1964. "To recover under Title VII, a plaintiff must first timely file a charge with the EEOC." *Vaughn v. Louisville Water Co.*, 302 F. App'x 337, 343 (6th Cir. 2008) (citing *Amini v. Oberlin Coll.*, 259 F.3d 493, 498 (6th Cir. 2001)). In order to assert a claim under Title VII, a plaintiff must "file a charge with the EEOC within 180-days after the alleged unlawful practice or within 300 days where the plaintiff first files with a state or local employment agency." *Joishy v. Cleveland Clinic Found.*, 3 F. App'x 259, 261 (6th Cir. 2001) (citing 42 U.S.C. § 2000e-(5)(e)). The limitations period begins to run on an employment discrimination claim when "an employer makes and communicates a final decision to the employee. Once the employee is aware or reasonably should be aware of the employer's decision, the limitations period commences." *EEOC v. United Parcel Serv., Inc.*, 249 F.3d 557, 561-62 (6th Cir. 2001) (citations omitted). Additionally, "[b]efore filing a Title VII claim, a plaintiff must receive a right-to-sue letter from the EEOC and then file suit within ninety days after receiving the right-to-sue letter." *Page v. Metro. Sewer*

9

*Dist. of Louisville & Jefferson Cnty.*, 84 F. App'x 583, 584 (6th Cir. 2003). Plaintiff did not file any charge with the EEOC regarding the discrimination about which he complains. Further, he has not presented the Court with any right-to-sue letter from the EEOC.

The limitations period for "filing a charge with the EEOC 'is subject to waiver, estoppel, and equitable tolling.'" *Amini v. Oberlin Coll.*, 259 F.3d at 500 (quoting *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982)).

> In determining whether the equitable tolling of the EEOC filing period is appropriate in a given case, [the Sixth Circuit has] consistently taken into consideration the following five factors: 1) lack of notice of the filing requirement; 2) lack of constructive knowledge of the filing requirement; 3) diligence in pursuing one's rights; 4) absence of prejudice to the defendant; and 5) the plaintiff's reasonableness in remaining ignorant of the particular legal requirement for filing his claim.

*Id.* (citing *Truitt v. Cnty. of Wayne*, 148 F.3d 644, 648 (6th Cir. 1998)). The five factors are not comprehensive nor is each relevant to every case. *Id.* Further, equitable tolling should be "granted only sparingly." *Id.*

Plaintiff states that he contacted the EEOC on at least five occasions and received no reply "in regard to the initiating of any sort of investigation of his claims." He also states that he contacted the EEOC, the Kentucky Department of Human Rights, the Hopkinsville Human Rights Commission, and "any and all other requisite agencies designed to deal with Redress of Grievance without recourse to the Federal Courts." Based on these representations, it is clear that Plaintiff was aware of his responsibility to bring his allegations of discrimination to the EEOC. It is also clear that Plaintiff was aware of the exhaustion requirement for discrimination actions since he refers to exhaustion in his complaint. Yet, Plaintiff never states that he filed any charge. According to Plaintiff, over seven years passed during which he was allegedly discriminated

against. However, in all that time, Plaintiff failed to file a charge. For these reasons, equitable tolling is not appropriate in this case.

Accordingly, the Title VII employment-discrimination claims must be dismissed.

*B. Conspiracy Claims*

Under § 1983 a civil conspiracy is "'an agreement between two or more persons to injure another by unlawful action.'" *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011) (quoting *Revis v. Meldrum*, 489 F.3d 273, 290 (6th Cir. 2007)). "It is well-settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under §1983." *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987). In order to state a claim of conspiracy, Plaintiff must allege the elements that make up a conspiracy claim: that a single plan existed; that the alleged coconspirators shared in the general conspiratorial objective to deprive Plaintiff of his constitutional or federal statutory rights; and that an overt act was committed in furtherance of the conspiracy that caused injury. *Hooks v. Hooks*, 771 F.2d 935, 944 (6th Cir. 1985).

A review of Plaintiff's complaint and amendment reveals that he has failed to meet the pleading standard needed to state a conspiracy claim. Plaintiff's complaint is completely devoid of factual matter that would allow the Court to draw a reasonable inference that the named Defendants engaged in a conspiracy to impermissibly deny Plaintiff employment. Plaintiff makes only general allegations that he connects to no particular person and which have no underlying factual support. He provides no factual support of conspiracy other than the repeated recitation that one existed. "The 'web of inference[s] is too weak' on the alleged facts to permit a finding, 'absent sheer speculation,' that [Defendants] shared . . . [an] unlawful objective." *Bazzi v. City of Dearborn*, 658 F.3d at 603 (quoting *United States v. Sliwo*, 620 F.3d 630, 637 (6th Cir. 2010)).

11

The complaint does not contain sufficient factual matter that, if accepted as true, states "a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. at 570).

Accordingly, Plaintiff's § 1983 conspiracy claims must be dismissed.

*C. State-Law Claims*

To the extent Plaintiff is bringing state-law claims, the Court declines to exercise supplemental jurisdiction over such claims. Under 28 U.S.C. § 1367(c), "[t]he district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Because the Court will dismiss the federal claims over which it has original jurisdiction, it will decline to exercise supplemental jurisdiction over the state-law claims and dismiss them without prejudice. *See Runkle v. Fleming*, 435 F. App'x 483, 486 (6th Cir. 2011) ("[W]hen, as here, 'all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims.'") (quoting *Musson Theatrical, Inc. v. Fed. Express Corp.*, 89 F.3d 1244, 1254-55 (6th Cir. 1996)).

Date:

cc: Plaintiff, *pro se*
    Defendants
4413.003